## BURR ET AL. VS. WILLIAMS.

Where it is in proof that the defendants had purchased of the plaintiff a quantity of corn to be delivered at a future day on the bank of the river, and that the plaintiff had so delivered it in good condition, and informed the defendants thereof, the corn is then at the risk of the defendants, and being injured by the rise of the water, the loss is theirs.

Where a *contract is made for the sale and delivery of corn to be put in sacks*, and the sacks are obtained by the vendor of the vendee, without any proof that the sacks were to be furnished by the vendee, the legal presumption is that the vendor was to find the sacks, and the verdict of the jury for the amount due upon the corn without allowing the vendee for the price of the sacks will be set aside.

Upon an agreement to sell and deliver corn, and no price agreed upon, the law fixes the price at the market value of the corn at the time of its delivery; and if, in such case, there is an understanding that the vendor shall measure the corn, or if the vendee receive and exercise acts of ownership over it, there is no need of measuring it to constitute a delivery.

Where a plaintiff sets out and relies upon a special contract, he is bound to prove it in order to enable him to recover upon such contract.

Where the proof, as to quantity, is that the plaintiff delivered from 1,000 to 1,500 bushels, the jury are at liberty to fix the quantity any where between the two sums stated.

*Appeal from Independence Circuit Court.*

Hon. WILLIAM C. BEVENS, Circuit Judge.

HARVARD
LAW SCHOOL
LIBRARY

ANDERSON, for the appellants.

If the plaintiff had fully proved his case, as laid in the declaration, he was only entitled to recover the balance due for the corn after deducting the set-off proved by the defendants. But when we look at plaintiff's evidence, we are left in doubt whether there was any contract between plaintiff and defendants for the sale of any corn. Proof of casual admissions or remarks made to persons not interested in the subject matter, is evidence of the lowest grade, as they are made without due care and very liable to be misunderstood or forgotten, so as entirely to change the effect of the remark. 1 *Greenleaf on Ev.,* sec. 200.

There is no evidence of the contract, as set up in the first three counts of the declaration. That defendants were to pay the price of thirty cents per bushel for the corn; that the corn was to be delivered in sacks, furnished by defendants to plaintiff, and that it was to be delivered by plaintiff and received by defendants on the bank of White river, in Independence county. All of which facts must be established, to enable the plaintiff to recover on either of the special counts in the declaration, under the charge of the court, which was clearly the law. And a finding for the plaintiff for any amount on either the

first, second, or third count, is without evidence, contrary to law, and in direct opposition to the charge of the court. 1 *Chit. on Plead.*, 305; *Snell, Stagg & Co. vs. Moses & Son*, 1 *Johns. Rep.* 105; *Stone vs. Knowlton*, 3 *Wend.* 375.

And the law clearly is, that on a general sale of goods, as on a sale of twelve hundred bushels of corn, or twenty tons of hay, without specifying the particular article sold, there must be an actual delivery of the article sold to vest the property in the vendee, so as to be at his risk, or to extinguish the vendor's lien and deprive him of his right of stopping in transitu. And when something remains to be done between buyer and seller, for the purpose of designating the particular article sold, or of ascertaining either the quantity or price, there is no delivery. *Rapelye & Smith vs. Mackie*, 6 *Cow.* 250; *Outwater vs. Dodge & Green*, 7 *Cow.* 85; *Shindler vs. Houston*, 1 *Denio* 48; *Olyphant vs. Baker*, 5 *Denio* 379; *Ward vs. Shaw*, 7 *Wend.* 405.

The corn had been placed on the bank of the river in an unknown quantity, and neither Burr & Co., nor any one of the witnesses who placed the corn there knew the amount. It had never been weighed, counted, nor the quantity ascertained by any person, nor had Burr & Co.'s part been separated or distinguished from the rest.

Burr & Co. could neither take the corn nor sustain an action of trover for it. 1 *Chit. on Plead.*, 148.

It then was clearly Robertson's corn, and remained at his risk, and Burr & Co. are only liable for what they actually received, and for what it was worth at the time they received it. They were liable for nothing until they received the portion of the corn that they took, and at that time the remainder of the corn was damaged, and Burr & Co. were not bound to receive it. Their act was unquestionably a receiving of the corn that was sound and a refusal of that that was damaged.

Stillwell & Woodruff, for the appellee.

Hon. Thomas Johnson, Special Judge, delivered the opinion of the Court.

This was an action of assumpsit brought by Robinson against Burr and Archer, as partners in trade, etc., in the Independence Circuit Court. At the September term, 1858, the cause was submitted to a jury upon the issues of non-assumpsit and set-off, and they returned a verdict in favor of the plaintiff for one hundred and ninety-five dollars damages, and costs. The defendants filed a motion for a new trial, which was granted by the court. At the March term, 1860, the cause was again submitted to a jury, who also returned a verdict for the plaintiff, and assessed his damages at two hundred and thirty dollars and ten cents. The defendants again presented their motion for a new trial, which being refused by the court, they brought their appeal to this court. The declaration contains six separate counts. The first three are predicated upon a supposed special contract, and are substantially the same. They allege, in substance, that on the first day of November, 1855, the plaintiff agreed to deliver to the defendants twelve hundred bushels of good merchantable corn on the bank of White river, in Independence county, within a reasonable time; that the defendants were to furnish the sacks in which it was to be placed, and that upon its delivery they were to pay him thirty cents per bushel for the corn. He avers that, on the day and year aforesaid, he did shell and put into the defendants' sacks, twelve hundred bushels of good merchantable corn, and placed the same on the bank of White river in rail pens, and covered the pens so as to protect the corn from the weather; and that on the day and year aforesaid, he advised the defendants of the fact, and then concludes with a denial that they had paid him the price stipulated, or any part thereof. The other three are the common counts, the first two charging that on the first day of May, 1856, the defendants were indebted to the plaintiff in the sum of three hundred and sixty dollars, for twelve hundred bushels of merchantable corn, before that time sold and delivered to them, and that being so indebted they

promised to pay it when requested; and the third alleges that. on the day and year aforesaid the defendants were indebted to the plaintiff in a like sum of money for the same amount of corn before that time sold and delivered to the defendants, and that being so indebted they promised to pay him so much money as the corn was worth, etc. The objections urged against the verdict of the jury, and which are insisted upon here, are that they found against the instructions of the court, and against law and evidence. The first point that we will examine is, whether the court below erred in refusing to set aside the verdict as being contrary to the evidence.

James Rutherford, a witness introduced by the plaintiff, testified that in the spring of 1856, the plaintiff hauled to the bank of White river, in Independence county, a quantity of corn, which was shelled and sacked, and put into rail pens, and covered with boards. That the corn was put up so as to be protected from the weather, and placed on a high bank, where it could not have been reached except by a very high rise, but that it was wet by the high water in May, 1856, which injured all but the top layers, so as to be unfit for shipment. That the rise referred to was the highest he had ever known, and he had been living on that river ten years; that the corn was put up in good order, and was good merchantable corn, and, in his judgment, there were from 1,000 to 1,500 bushels. That Mr. Burr, of Burr & Co., had a conversation with him whilst the plaintiff was placing the corn upon the bank of the river, in which he told him that Burr & Co. had bought corn of the plaintiff, but that if he (the plaintiff) wished to sell it he could do so, and Burr & Co. would wait upon him twelve months for the amount they had advanced, or paid on it. That corn had then fallen to about twenty or twenty-five cents per bushel, but that in the fall and winter previous it had been worth thirty or thirty-five cents, that is, when shelled and sacked and delivered at a shipping point. He further stated that after the water had subsided, Mr. Archer, of Burr & Co., passed down the river in a steamboat, that he stopped at the pens, and that

by his directions the hands of the boat took off the top layers of the corn. That the corn remained in the pens four or five weeks, and that during the month of April the mail boats made several trips between Batesville and Napoleon, passing the corn, and that those boats were then shipping corn through to New Orleans, and that New Orleans was the general destination of corn shipped from the county that year.

Blankership, another witness, stated that in the winter or spring of 1856, he assisted the plaintiff in delivering corn; that from his judgment they put from 1,000 to 1,500 bushels in the pens on a high bank of the river, that the pens were well covered, the pens were well put up, and that it was good merchantable corn. That he was present when Mr. Archer, of Burr & Co., passed in a steamboat and had the pens uncovered and some sacks of the corn taken into the boat, that he asked him (the witness) to cover up the pens again, which he declined, and Mr. Archer went along leaving the pens uncovered.

Mr. Carpenter also testified that he saw the plaintiff putting corn in pens on the bank of White river, near Rutherford's warehouse, in the spring of 1856, that he was himself putting a pen of corn there for Mr. Burr, that in his opinion there were from 1,000 to 1,500 bushels placed there by the plaintiff, and that it remained there some four or five weeks before the high rise in the river in May, 1856.

John C. Robinson, another witness for the plaintiff, testified that he helped his father to gather, shell and sack and place corn on the bank of White river in good covered rail pens, that the corn was good, and from 1,000 to 1,500 bushels. That after the corn was delivered on the bank of the river, his father sent him up to Batesville to Burr & Co. to notify them of its delivery, that he went to their store, and finding M. S. Sheppard in the counting-room, who was acting as their clerk, told him that the corn was ready for them; that Sheppard replied that in a few days a steamboat would be along and they would be down to take the corn, that he made a memorandum in a

book of what he told him, and that it was four or five weeks before the freshet in May, 1856.

Walter B. Rutherford testified, that in the winter of 1856, he was in the counting-room of Burr & Co., and that Mr. Archer, of Burr & Co., asked him if the plaintiff was good for a contract for 1,200 bushels of corn that was to be sacked, and said, at the same time, that Burr & Co. had bought that quantity of the plaintiff, and paid on it one hundred and sixty dollars.

James Rutherford, a witness for the defendant, said that the cost of gunny bags, that held two bushels and a peck, during the fall of 1855 and winter of 1856, was about 21 cents, and that for such as held two and a half and three bushels, the price would be more in proportion. John G. Robinson, who also testified for the defendant, stated that his father got some eight hundred bushels of the corn in question from a Mr. Metcalf; and that Burr & Co. paid Metcalf one hundred and sixty five dollars for it, and that they paid it to him for the plaintiff, and at his request; and that to sack the corn, he, for his father, got two bales of sacks from Mr. Burr. Gunny bags, 250 in a bale—those in one bale holding about two-and-a-half bushel ; and those in the other about three; that those sacks were used in sacking the corn, and all but about 20 or 30 were so used by the plaintiff. This is the substance of all the testimony in the case. The jury were clearly authorized to find that the plaintiffs delivered twelve hundred bushels of good merchantable corn on the bank of White river; that it was received by the defendants, and that the price or value of it was thirty cents per bushel. These facts are well established as well by direct testimony, as of the overt acts of the defendants. The evidence is, that one of the firm enquired of a witness whether the defendants could comply with a contract to furnish that quantity of corn, saying at the same time that they had purchased of him so much, and that after it had been delivered some four or five weeks upon the bank of the river, the same party took a part of the corn from the pen, into which it had

been placed, and shipped it on a steamboat that was descending the river. The other member of the firm admitted that he had bought corn of the plaintiff, and that, if he desired to do so, he could sell it again, and that he would wait upon him twelve months for the amount he had advanced upon it. It is insisted for the defendants that the corn was not delivered and received by them, but that though placed upon the bank of the river, yet it was there at the risk of the plaintiff. We think that the jury was authorized to find the reverse to be true. The plaintiff, immediately upon the delivery of the corn on the bank of the river, caused the defendants to be notified of the fact through their clerk, who reported that a boat would be along soon and take it. The whole current of the testimony goes to show that the defendants were duly informed of the fact, and that nothing remained to be done on the part of the plaintiff to constitute a full and effectual delivery. They not only paid him a considerable part of the purchase money, but they also admitted the purchase and exercised such acts of ownership as no one would have presumed to do, unless they had taken the exclusive control of the corn. But it is contended, that even admitting that the defendants received the corn, yet they were entitled to a deduction for the value of the sacks which were furnished by them. If the defendants were to furnish the sacks, that part of the contract is not supported by the proof. There is a total failure in the evidence upon that point, and consequently, the jury were not authorized to give the plaintiff a verdict for the value of all the corn, but it having been proved that he received the sacks from the defendants, and that without any showing that he was not to pay for them, the law would clearly entitle them to a deduction for their value. When the defendants made it appear that they had furnished the sacks to the plaintiff, the law raised an implied promise to pay them their value, and there is not a particle of evidence in the whole record tending to rebut that legal presumption. If there had been any evidence, although slight, in support of that allegation, we should not have felt disposed to disturb the verdict, but

when there is an utter failure we have no discretion, and are bound to set it aside. It is obvious that the jury made no deduction whatever, but wholly disregarded the set-off set up by the defendants. The verdict first rendered was precisely the sum charged for the whole amount of the corn after deducting the payment which was proved to have been made; and the second, we presume, was for the same amount, with the addition of the interest that had accrued upon it. In this respect we think there was error. The next question to be decided relates to the correctness of the verdict, as based upon the instructions of the oourt. The first instruction asked by the plaintiff, and given by the court, was, that if the jury should find from the evidence that the plaintiff sold to the defendant corn, to be sacked and delivered in good order, and that there was no price agreed upon to be paid for the same; that the law fixed the price at the market value of the corn at the time of its delivery, and that if they should find the corn to have been delivered according to the agreement, and that the defendants, or their agents, were duly notified of the delivery, then they must find for the plaintiff, on the 4th, 5th, 6th and 7th counts of the declaration, and assess the damages at the market value of said corn, considered with reference to the agreement and quantity actually delivered. This instruction is clear law so far as it goes, but is too narrow for the case made by the proof, and consequently is to that extent insufficient. It was calculated to mislead the jury, as it was wholly silent as to the matter set up as a set-off to the sum claimed. The second asked by the plaintiff, and given, is, that if the jury should find from the evidence that there was an understanding, either expressed or implied, between the plaintiff and defendants, that the defendants should rely on the plaintiff to measure and put up the corn, and ascertain its quantity, then there would be no necessity for any further measurement in order to constitute a delivery; and the third and last is, that if the defendants, or either of them, received the corn under the contract, by exercising any act of ownership over it, that there would be no need of mea-

suring the corn in order to constitute a delivery. Those two
last instructions were strictly legal and based upon the evidence
as already announced. The defendants then submitted eight
instructions, all of which were given by the court. The first
five all assert a doctrine which is familiar and unquestionable,
and which is, that where the plaintiff sets out and relies upon
a special contract, he is bound to prove it in order to enable
him to recover upon such contract. These instructions relate
exclusively to the first three counts in the declaration, each of
which allege a special contract; and it will be readily conceded
that the proof in such case must correspond with the allega-
tion, and that if it fail to do so, the plaintiff cannot recover.
The plaintiff virtually abandoned the first three counts, as he
did not ask any instruction based upon them, but confined him-
self to the common counts, The sixth is, that upon the 4th, 5th
and 6th counts the plaintiffs could only recover for the amount
of corn that was received by the defendants, and at a price
that the corn was worth when it was taken or received by the
defendants. This is unobjectionable, and it is well sustained
by the evidence, as we have heretofore found it. The testi-
mony is, that the plaintiff delivered from 1000 to 1500 bushels,
from which the jury were certainly at liberty to fix the quantity
anywhere between the two sums stated; and they were also
authorized, from all the facts and circumstances, to say that the
whole amount delivered was received by the defendants. The
seventh directs the jury, that in case they should find the plain-
tiff indebted to the defendants, they shall give them credit for
the same and find accordingly, and in case the claim of the
defendants should exceed that of the plaintiff, they would return
a verdict against him for that sum. This instruction was in
accordance with legal principles, and fully commensurate with
the case made by the proof. The eighth and last instruction
asked by the defendants was, that if the jury should find from
the testimony that so many bushels of corn were to be received
by the defendants from the plaintiff, which was to be paid for
by the bushel, they must find that the corn was counted, weighed,

or shown in some way that the number of bushels was ascertained by the parties before they can find that the corn was delivered.   This is broad, and will doubtless extend itself sufficiently to embrace the state of fact here presented.   The number of bushels is to be ascertained in some way before they can find a delivery.   If the purchaser leave it to the seller to measure it, and to deliver it in a specified place, when it is thus delivered, it most assuredly would not lie in the mouth of the former to say that the number of bushels had not been ascertained.   The testimony in this case is silent as to who should measure the corn, but when it appears that a certain quantity was delivered, and that the defendants, by their acts and admissions, recognized it, we think it may be safely said that the quantity was ascertained.   We conclude, therefore, that the testimony is sufficient to establish a delivery of the whole amount of corn sacked and placed upon the bank of the river by the plaintiff; but inasmuch as there is no evidence whatever to support the allegations that the defendants were to furnish the sacks, the jury having failed to give them any credit for their value, the judgment ought to be reversed and the cause remanded for a new trial.   Let the judgment be reversed.

Mr. Justice FAIRCHILD did not sit in this case.