# CASES

IN THE

# SUPREME COURT OF ILLINOIS.

## NORTHERN GRAND DIVISION.

### SEPTEMBER TERM, 1873.

## CHARLES E. SHELTON

*v.*

## JOHN FRANKLIN.

1. REPLEVIN—*to avoid the effect of an injunction.* A and B were partners dealing in stock. A filed his bill against B to close the partnership, and for an account, and enjoined B from disposing of any of the partnership property, and during the pendency of this suit made a sale of the partnership hogs to the plaintiff, who knew of the pendency of this suit at the time of his purchase, but before delivery B filed his bill in chancery and obtained an injunction against A and the purchaser, enjoining the first from selling the property, and the latter from taking possession. After the service of the injunction on him, the purchaser replevied the hogs, and thus obtained possession: *Held*, that the effect of the second injunction was to annul the proceedings in replevin, and the replevin suit should have been dismissed.

2. SALE—*by one partner is good against the other without a delivery.* A sale by one partner of personal property belonging to the firm, if within

the scope and object of the firm, is a sale by the firm, and, as against the firm, an actual delivery is not essential to the sale.

3. SAME—*where the full price is paid, weighing not necessary to pass the title.* Where one partner sold the entire lot of hogs belonging to his firm, at eight cents per pound, and the sum paid at the time was understood to be in excess of the price, but the excess, when ascertained, was to be applied on another transaction: *Held,* that the title to the hogs passed immediately to the purchaser, without first ascertaining their weight, or making a formal delivery.

4. SAME—*what a sufficient delivery.* Where one partner sold an entire lot of hogs belonging to his firm, then on a third person's premises, and the purchaser paid the full price at the time of the sale, and the hogs were then collected together in the presence of both parties, this was *held,* a sufficient delivery to pass the title as against the partners.

5. INSTRUCTIONS — *must not require the finding of unnecessary fact.* Where the proof shows a sale and delivery of personal property, which passes the same immediately to the purchaser as against the vendors, it is erroneous to give an instruction which assumes that as between the parties something is necessary to be done, as, ascertaining the weight, to pass the title.

6. VERDICT—*must be consistent with the issues.* In replevin, the verdict of the jury must be consistent with the issues presented by the pleadings. On finding the issues for the defendant, finding the property in a person not named in any of the pleas, can not be sustained.

APPEAL from the Circuit Court of Livingston county; the Hon. CHARLES H. WOOD, Judge, presiding.

This was an action of replevin, brought by Charles E. Shelton against John Franklin. The opinion of the court shows the state of the pleadings and the facts of the case. Charles Packwood, the partner of the defendant, who sold the hogs, in his testimony stated that the hogs, at the time of the sale, were at what was called Babcock's Grove; that the day he received the purchase money he went there and took possession of the hogs, and collected them together for the purchaser, who was present to receive them; that the defendant, on being informed of the sale, set his dogs on them and scattered them, and that he told the purchaser there were his hogs, to take them. Judgment being rendered for the defendant, the plaintiff appealed.

Mr. CHARLES J. BEATTIE, for the appellant.

Messrs. PAYSON, PILLSBURY & LAWRENCE, for the appellee.

Per CURIAM: The only point we have considered raised in this record is, the effect of the injunction obtained by Franklin against his co-partner, Packwood, and Shelton, the appellant. It was served on Shelton before the writ of replevin was served on the property, and he knew that prior to that time, and prior to his alleged purchase of the hogs of Packwood, the latter had, by his bill in chancery filed for that purpose, enjoined Franklin from selling and disposing of the partnership property, which these hogs were. It was acting in bad faith, under these circumstances, for Packwood to attempt to sell the same property to Shelton. The hogs were not delivered to Shelton when Franklin obtained his injunction. Chancery had obtained jurisdiction of the subject matter. We think the effect of this injunction should be, to annul the proceedings in replevin, and instead of proceeding to judgment in the replevin suit, the same should have been dismissed, so as not to jeopard Shelton's rights in case the injunction should be dismissed on the hearing.

To effect this purpose, the judgment must be reversed. The judgment is, accordingly, reversed, and the action of replevin dismissed, as in violation of the writ of injunction.

*Judgment reversed.*

A rehearing having been ordered in this case, the following additional opinion was filed.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This case was before this court at the last term, and the only question then considered was, the effect of the injunction obtained by Franklin against his co-partner, Packwood, and Shelton, the appellant, the object of which was to restrain

Packwood from selling or disposing of any of the partnership property of Franklin and Packwood.

It now appears that the injunction had been dissolved and the bill dismissed, and the court, on its own motion ordered a rehearing of the cause at this term, giving to appellee until the first day of December next in which to file his brief. He has not availed of this, and we will now dispose of the cause on the merits.

The action was replevin, brought by Shelton, appellant, against Franklin, to regain possession of a lot of stock hogs, claimed by Shelton to have been purchased by him of Packwood, the partner of appellee, and the money paid therefor at the time of the sale. At the same time, it is claimed, appellant bought of Packwood the right of pasturage and a quantity of corn, all then being on the farm of the firm called " Babcock's Grove." The price agreed upon for the hogs was eight cents per pound, they to be weighed at the scales at "the Grove," or at Marsh's scales, about four miles distant, at the option of Shelton. It was agreed, that if the money paid by appellant should be more than sufficient to pay for the hogs, as it was known it would be, the excess was to be applied on the pasturage and corn accounts.

There was a difficulty between these partners, and had proceeded so far as to warrant Packwood to apply for and sue out a writ of injunction to restrain Franklin from selling any of the partnership property, and whilst this injunction was in full force against Franklin, Packwood sold the hogs to the appellant, and received the money therefor. It is in proof that before this sale Henry D. Marsh, acting for appellant, had a conversation with Franklin about selling the hogs, in which conversation Franklin told Marsh that any trade he could make with Charlie Packwood would be satisfactory to him. This was reported to appellant, and he closed the trade with Packwood, paying him twelve hundred dollars in cash.

As we understand the testimony, the hogs were sold as they were, running at large at " the Grove." The parties went to

the Grove with a sufficient force to collect them together, and had so done, and were driving them away, when Franklin appeared on horseback, accompanied by dogs, and so scattered the drove as to prevent their being driven, and declared they should not be taken from the place.

Franklin then obtained the injunction of which we have spoken, and appellant his writ of replevin.

In this action of replevin, appellee, Franklin, pleaded: 1, *non cepit*; 2, *non detinet*; 3, the property was not the property of plaintiff; 4, property in defendant and one Mary A. Packwood; 5, that defendant had been enjoined by his partner, Packwood, from selling the property, and that defendant caused an injunction to issue against the plaintiff to restrain him from taking possession of the property, and that after the service of the writ of injunction, plaintiff made use of the process of the court to get possession of the property; 6, property in the defendant; and 7, property in Elizabeth Packwood.

There was a demurrer to the third plea, which the court allowed, and no other issue was made up on it. Replications were put in to the remaining pleas, and the cause went to trial, and the jury found this verdict: "We, the jury, find the issues for the defendant, and the right of property to be in Franklin and Packwood;" on which the court gave judgment as follows: "Whereupon it is considered by the court that the right of property herein be, and the same is hereby declared to be in the defendant Franklin, and Packwood, and that a writ of *retorno* do issue," etc.

The only question we deem it important to consider is, had appellant, at the time of suing out the writ of replevin, a right to the possession of the property in question. As between appellant and the partnership concern of Franklin and Packwood, an actual delivery of this property was not essential. *Wade* v. *Moffit*, 21 Ill. 110. And as the right of one partner to sell the goods of the partnership to whom he pleases is not questioned, in view of the principles governing that relation,

a sale by one is a sale by the firm, if within the scope and object of the partnership. But here was a delivery.

The sale, then, by Packwood, and the delivery at "the Grove," such as it was, passed the right of property and of possession to appellant. The fact the hogs were to be weighed does not, in this case, amount to any thing, as the sum paid by appellant to Packwood was understood to be more than sufficient to pay for the hogs, they not exceeding in value eight hundred dollars, or thereabouts. As to delivery of specified articles, though something remains to be done, if it was the intent of the parties, title should pass. See *Marble* v. *Moore*, 102 Mass. 443; *Merchants' Nat. Bank* v. *Bangs*, ib. 295; *Bemis* v. *Morrill*, 38 Ver. 153; *Barker* v. *Megall*, 19 Gray, 376.

So, although something remains to be done for the purpose of vesting the property, or to fix the amount to be paid, by weighing, measuring or the like, the property will pass before the act is done, if such appears by the contract to have been the intention of the parties. *Alexander* v. *Gardner*, 1 Bing. (N. C.) 671; *Castle* v. *Playford*, 7 Excq. 98; *Fitch* v. *Breck*, 38 Verm. 638; *Riddle* v. *Varnum*, 20 Pick. 283; *Williams* v. *Adams*, 3 Sneed, 359; *Ford* v. *Chambers*, 28 Cal. 13; *Cummins* v. *Griggs*, 2 Duvall, 87; *Burr* v. *Williams*, 23 Ark. 244; *Terry* v. *Wheeler*, 25 N. Y. 525; *Cushman* v. *Holyoke*, 34 Maine, 289; *Fuller* v. *Bean*, 34 N. Hamp. 300; *Stone* v. *Peacock*, 35 Maine, 388; *Bellows* v. *Wells*, 35 Verm. 509; *Morse* v. *Sherman*, 106 Mass. 430. The question of intent is for the jury. *McClurg* v. *Kelly*, 21 Iowa, 508; *DeKidder* v. *Knight*, 13 Johns. 294; *Riddle* v. *Brown*, 20 Pick. 283; *George* v. *Stubbs*, 26 Maine, 250.

In this connection, the third instruction given for appellee was erroneous. It assumes the hogs were to be weighed, to make the sale complete, when the proof, as we understand, is that the title passed to appellant, and a delivery made on the instant the money was paid; and in the same connection, it was error to modify appellant's ninth instruction, as

by the modification the jury were led to believe something more was to be done to complete the sale, by these parties, and to vest the title in appellant.

In looking at the issues made up in this case, we notice no one of them presents the fact found by the jury, that these hogs were the property of Franklin and Packwood. There was an issue presented that they were the property of the defendant and one Mary A. Packwood, and another that they were the property of Elizabeth Packwood. The jury found all these issues for the defendant, when there is not a particle of proof to sustain either of them. The cause seems to have been tried hastily, and believing the verdict is against the weight of evidence, to which result the erroneous instructions of the court, which we have pointed out, must have contributed, the judgment must be reversed, and the cause remanded, that a new trial may be had consistent with this opinion.

*Judgment reversed.*