Luthy & Co.

*v.*

L. Waterbury & Co.

*Filed at Ottawa March 24, 1892.*

1. Contract—*guaranty construed.* By a written contract a party agreed to sell to another binder twine at Peoria, Ill., Omaha, Neb., and various other points, amounting to 424,548 pounds, at certain prices therein named, free of charge for freight, storage, etc., until the warehouse receipts for the same should be turned over, payable by notes on receipt of invoice, one-third on September 10, one-third on October 10, and one-third on November 10, following, the vendor guaranteeing that the twine sold was in good condition and a merchantable article: *Held,* that the guaranty had reference to the condition and quality of the twine at the time the contract was made, and not to the time when the warehouse receipts were turned over, although possession of the goods would not pass until the warehouse receipts were delivered.

2.  SAME—*of sale with guaranty to reduce price to price of future sales*
—*effect of future sale with privilege of returning unsold goods.*  Where
the vendor of twine guaranteed to the purchaser that if he or another
party named should sell twine at a less price than that charged to the
purchaser he would make a corresponding reduction on the twine so
sold, and it appeared that the vendor had sold twine to another party
at the same price, but with a privilege of returning at the end of the
season any twine unsold, it was *held,* that the privilege of returning
unsold twine was not necessarily a reduction of the price, and that the
first purchaser could not claim a reduction without proof that the last
sale affected the market value of the twine.

3.  SAME—*of sale of personal property—when title passes.*  On a con-
tract for the sale of personal property the title thereto will pass, if such
is the intention of the parties, although measuring or weighing is to be
had at a subsequent time, in order to ascertain the amount to be paid.

4.  So where a written contract for the sale of twine states the number
of pounds sold and the location of the property, leaving nothing to be
done to place the purchaser in full possession thereof except to pass
over to him the warehouse receipts held by the seller, the title to the
property sold will, as between the parties, pass upon the execution of
the contract.

APPEAL from the Appellate Court for the Second District;—
heard in that court on appeal from the Circuit Court of Peoria
county; the Hon. THOMAS M. SHAW, Judge, presiding.

This was an action of assumpsit, brought by L. Waterbury
& Co., against Luthy & Co., on a promissory note for $19,000
and upon an open account for $2869.92.  To the declaration
the defendants pleaded the general issue and two pleas of set
off.  On a trial of the cause in the circuit court the plaintiffs
recovered a judgment for $20,936.60, which, on appeal, was
affirmed in the Appellate Court.

The facts out of which this litigation arose, so far as they
are necessary to a proper understanding of the case, may be
briefly stated.  L. Waterbury & Co. are extensive manufac-
turers and dealers in cordage and binder twine in New York,
while the defendants, Luthy & Co., are large wholesale dealers
in farming implements and binder twine in Peoria.  In March,
1889, Ferdinand Luthy, one of the firm of Luthy & Co., vis-

ited New York for the purpose of purchasing binder twine. On the 29th day of March, 1889, the National Cordage Company entered into a written agreement with Luthy & Co., by which it agreed to sell Luthy & Co. one thousand tons of binder twine, at thirteen and one-half cents per pound for sisal, fourteen and one-half cents per pound for "half and half," and fifteen cents per pound for manilla,—all to be f. o. b. New York. It was stipulated in this contract, that if the National Cordage Company, or any of its members, should, during the season, make a lower price or more favorable terms, which would be equivalent to lower prices, to any one, a corresponding reduction should be made to said Luthy & Co.

On the 4th day of April, 1889, L. Waterbury & Co. also made a written contract with Luthy & Co., by which they sold Luthy & Co. binder twine, then at Peoria, Ill., Omaha, Neb., Indianapolis, Ind., Sioux City, Iowa, and at the following places in Dakota : Aberdeen, Osnabrook, Hillsboro, Valley City, Lisbon, Portland, Buffalo, Devil's Lake, Wahpton and Fairmount,—the said twine having been bought up by said L. Waterbury & Co. from different factories throughout the country, and being twine that had been carried over from the season of 1888. By the contract between L. Waterbury & Co. and Luthy & Co., the former agreed to sell to the latter said twine, amounting in the aggregate to 424,548 pounds, at the prices following : thirteen cents per pound for sisal, fourteen cents per pound for mixed, and fifteen cents per pound for pure manilla, free of all charges for freight, storage, insurance and other expenses, until the warehouse receipts for the same should be turned over to Luthy & Co. The twine was to be paid for by Luthy & Co. in their notes on the receipt of invoice, one-third of the amount to be paid September 10, one-third October 10, and one-third November 10, 1889. The first notes were paid as they matured, and the last note mentioned is the one upon which this suit is brought. By said contract, L. Waterbury & Co. guaranteed that the twine was

in good condition and a merchantable article, and further guaranteed, that should the National Cordage Company, or the said L. Waterbury & Co., sell twine during the season at less prices than the prices at which said L. Waterbury & Co. agreed to sell Luthy & Co., the said L. Waterbury & Co. would make a corresponding reduction on the twine sold to the said Luthy & Co.

The defendants, in their pleas of set-off, set up and claim, first, that the twine so agreed to be sold was not in good condition and a merchantable article, as guaranteed by the plaintiffs to be, but that, on the contrary, the same was old, was badly pressed, the oil therein to some extent had left the twine, and the same was dried out and was short in weight, and was not in good condition and a merchantable article; and second, that the said National Cordage Company and the plaintiffs did, during the season of 1889, sell binder twine at a less price than the price at which the plaintiffs agreed to sell the same to the defendants, by reason whereof the defendants were entitled to a corresponding reduction of the price at which the plaintiffs had sold the said twine to the defendants.

Messrs. PUTERBAUGH & PUTERBAUGH, for the appellants.

Messrs. McCULLOCH & McCULLOCH, for the appellees.

Per CURIAM: The principal part of the argument of counsel for appellants is devoted to a discussion of controverted questions of fact; but as we do not pass upon those questions, it will not be necessary to consider that portion of the argument. No question has been raised in regard to the ruling of the court on the admission or exclusion of evidence. The only remaining question, therefore, for our consideration is, whether the court erred in its instructions to the jury.

The court, in instructions Nos. 5 and 6, given for the plaintiffs, in substance directed the jury, that by the contract between the parties, plaintiffs guaranteed the twine sold to be

in good condition and a merchantable article, and that the guaranty had reference to the condition and quality of the twine at the time the contract was made. It is plain that by the terms of the contract the possession of the twine would not pass to appellants until such time as the warehouse receipts should be delivered over to them, and the question is not free from doubt whether, under the contract, the guaranty related to the condition of the twine at the date of the contract, or at the date the possession of the property should pass into the hands of appellants by the delivery to them of the warehouse receipts. We are, however, in view of all the provisions of the contract, inclined to the view that the court placed the proper construction upon it. If the sale was complete, and the title to the twine passed on the execution of the contract as between the parties, then the guaranty related to the date of the contract.

In a contract of sale the title will pass if such is the intention of the parties, although measuring or weighing is to be had at a subsequent time, in order to ascertain the amount to be paid. (*Straus* v. *Minzesheimer*, 78 Ill. 493.) Here, the number of pounds of twine was stated, the price fixed, and the location of the property specified. Nothing remained to be done to place defendants in full possession of the property sold, except to pass over the warehouse receipts. From the different provisions of the contract we think the parties intended that the title should pass when they executed the contract. The language of the guaranty itself would also seem to favor the construction placed upon it by the court. It is as follows: "Party of the first part hereby guarantee that this twine is in good condition and a merchantable article." When? Obviously at the date of the agreement. But even if the court was in error in the construction placed upon the guaranty, all the evidence offered to show the condition of the twine two months after the contract was executed was allowed to go to the jury, for the purpose of showing the condition of the twine

when the contract was made, and as the jury had all the evidence before them, it is difficult to see in what manner the defendants' rights were prejudiced by the instructions. If an error was committed, it was one that did no harm, and can not be relied upon to reverse the judgment.

It is also claimed that the court erred in giving the plaintiffs' fourth instruction, as follows :

"The jury are further instructed, that they are not at liberty, under the law, to take into consideration, in fixing the prices at which the National Cordage Company or the plaintiffs sold binder twine during the season of 1889, any fact or circumstance which did not enter into or affect the market value of such twine, in comparison with the prices named in the contract between plaintiffs and defendants. The jury are therefore instructed to pay no regard to the claim made by the plaintiffs that there was an advantage accruing to the purchaser by reason of there being a provision in his contract whereby he was accorded the privilege of returning to the seller all twine remaining unsold at the end of the season, unless the jury believe, from the evidence, that such privilege of returning affected the market value of twine sold with such privilege."

It was claimed by the defendants that they were entitled to a deduction on the price of twine, on the ground that plaintiffs had sold twine at less prices during the season, and under a provision in the contract they were entitled to a corresponding reduction. The provision of the contract relied upon is, that "should the National Cordage Company or the party of the first part (appellees) sell twine during the season at less prices than the above, they will make a corresponding reduction on this twine." Evidence was introduced tending to show sales of twine by the National Cordage Company for a less price, and also that in one instance, at least, a contract was made whereby the purchaser had the right, at the end of the season, to return all twine unsold, and it was claimed by the

defendants that the right of return was a reduction in the price, which would inure to the benefit of defendants under their contract. Under the contract, if the National Cordage Company or the plaintiffs should sell twine for a less price than defendants had agreed to pay, then defendants were to have a reduction in the price they were to pay. But the fact that one or more parties had the privilege of returning twine at the end of the season would not, of itself, in the absence of other proof, show that the price had been reduced. Whether the privilege of returning was an element which would reduce the price, was a question to be determined by the jury from all the evidence, and we think the jury were properly instructed to disregard the fact that a purchaser had the privilege of returning twine at the end of the season, unless such privilege affected the market value of the twine. If the right to return did not produce a reduction in the price of the article on the market, it could have no effect on the contract of defendants or their rights.

The defendants' fourth instruction was modified to make it conform to instruction No. 4, given for the plaintiffs, by adding, "if the jury believe, from the evidence, that such privilege of return affected the market value of the twine." From what was said in regard to the fourth instruction, if we are correct, it follows that the modification was right.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*