## Loyal W. Murphy, Plaintiff in Error, v. Charles H. Lever, Defendant in Error.

### Gen. No. 14,320.

1. CONTRACTS—*when question of construction for jury.* In this case the question was as to whether or not a warranty was continuous or otherwise; *held,* that whether such warranty was continuous by virtue of the construction of the contract by the conduct of the parties, was a question of fact to be determined by the jury and that it was error for the court to decide such question as one of law.

2. WARRANTIES—*what not continuous.* Held, as a matter of law, that a warranty in words as follows, was not continuous: "The boiler above referred to is warranted to stand a pressure of 100 pounds," meaning a steam working pressure; such a provision being contained in a lease which contained the usual provisions with respect to the tenant keeping the demised premises in good repair.

3. ACCORD AND SATISFACTION—*when exclusion of evidence of, erroneous.* If a question becomes the subject-matter of litigation which previously had formed the basis of a settlement between the parties, it is error to exclude a contract which tends to show an adjustment of such controversy.

Action commenced before justice of the peace. Error to the Superior Court of Cook county; the Hon. G. W. PATTON, Judge, presiding. Heard in this court at the March term, 1908. Opinion filed March 4, 1909. Rehearing denied April 8, 1909.

CRATTY BROS. & JARVIS, for plaintiff in error.

E. C. MAPLEDORAM, for defendant in error.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a judgment in favor of the defendant, Charles H. Lever, and against the plaintiff, Loyal W. Murphy, for costs. The suit was commenced by distress warrant and was first tried before a justice of the peace, and was appealed from the justice to the Superior Court, where it was again tried. The jury found for the defendant, the plaintiff's motion for

a new trial was overruled and judgment was rendered on the verdict.

April 3, 1903, the plaintiff executed a lease to the defendant of the following described premises: lots 11 to 26 in block 5, in B. F. Jacobs' subdivision of blocks 1 to 16, and blocks 21 to 38 in B. F. Jacobs' Evergreen Park subdivision of the southeast quarter of section 2, township 37 north, range 13 east of the third principal meridian, in the village of Evergreen Park, in Cook county, State of Illinois, together with all buildings and improvements thereon of every kind and character, including all fixtures, boilers, engines, pulleys, shafting, belts, switches, trackage, fencing and the apparatus and equipment of the factory and plant of said premises, except match-making machinery, now on said premises, which is to be removed prior to April 15, 1903. "The boiler above referred to is warranted to stand a pressure of one hundred pounds, meaning a steam working pressure". The term for which the premises were leased is stated to be from May 1, 1903, till April 30, 1905. The rent reserved is $2,200, payable as follows: $100 on the execution of the lease; $75 on taking possession of said premises on or before May 1, 1903; $75 in advance, June 1, 1903, and on the first day of each month thereafter, to and including April 1, 1904, and $100, in advance, on the first day of each month thereafter until the termination of the lease by lapse of time, or by exercising the option of said second party, of even date herewith, to purchase said property."

The lessee, defendant, covenants that he "has received said premises in good order and condition", and that, at the expiration of the term, he will yield up the same in like condition, loss by fire, inevitable accident and ordinary wear excepted; "and also will keep the said premises in good repair during this lease at his own expense".

The defendant took possession of the premises the latter part of April, 1903, and commenced moving his machinery in May, 1903, which he testified took about a

month. He continued in possession till July 31, 1904, when he moved out of the premises, taking his machinery, etc., with him. The present suit is for the rent for the months of September and October, 1904.

The defendant resists payment of the rent, claiming that the boiler would not stand a steam working pressure of 100 pounds. The defendant testified that it was tried for low pressure the first time work was started in April, 1903, and the gauge showed 30 pounds, and that he took the steam gauge to the city and found it was not right, and had to have new springs put in it, and that, after the gauge had been fixed, he made no test, and did not know what the boiler showed at the time he took possession.

George Overton, who was in defendant's employ from some time in April, 1903, till February, 1904, testified that after Mr. Lever had the steam-gauge fixed they made a water test of the boiler, which showed a pressure of 130 pounds.

George Hawley testified that he worked for Mr. Lever from April 17, 1903, till August 8, 1903, as fireman and engineer combined, and that he saw a water test of the boiler May 1, 1903, George Overton being present, and that this was after the gauge had been fixed and was on. He says the boiler was pumped full of water and then, with a force pump, 130 pounds pressure was applied. Overton, who saw the test, testified that there was no leakage from the boiler when the pressure was applied.

W. E. Williams testified that he was a mechanical expert, and at one time was superintendent of motive power and machinery on a line of railroad; also that he had full charge about a year, of such boilers as the one in question and was familiar with the mode of testing such boilers, and that the usual test was with cold water, and that a cold water test of 130 pounds pressure, on a second-hand boiler, would indicate a capacity of carrying 100 pounds steam working pressure without any difficulty.

Frank N. Jewett, mechanical engineer, testified that

if a boiler stood 100 pounds cold water pressure, it would safely carry 100 pounds steam working pressure.

There is evidence produced by the defendant to the effect that, subsequent to the time when the test testified to by Overton and Hawley was made, the boiler would not stand a steam working pressure of 80 pounds, though the evidence is conflicting as to this.

We have referred to the foregoing evidence chiefly for the purpose of illustrating the importance, in the case, of the following instruction given at defendant's request, and which plaintiff's counsel contend is erroneous:

"The court instructs the jury that while it is in the province of the jury to determine from the evidence whether the lease and contract introduced in evidence were executed by the parties whose names appear on them, it is the duty and province of the court to construe and interpret said lease and contract and advise the jury by instructions as to the rights and liabilities of the respective parties to said lease and contracts.

"And in this case if the jury believe from a preponderence of the evidence that the contract of lease introduced in evidence was executed by the parties thereto, then the court instructs the jury that the said contract of lease constitutes and is a valid and binding contract between the plaintiff and defendant, and the court further instructs the jury that in and by said contract of lease the said Loyal W. Murphy covenanted and warranted to the said Charles H. Lever that the boiler mentioned in said lease would stand a steam working pressure of 100 lbs., and under the law and construction put upon the lease by the parties thereto, said warranty extended during the whole period included between May 1st, 1903, and the thirtieth day of April, 1905, and that under the terms of said lease it was the duty of said Loyal W. Murphy to so care for and maintain said boiler that at all times during the period covered by said lease the boiler should stand 100 lbs. of steam working pressure".

It will be observed that the court, by this instruc-

tion, decided that the construction placed on the contract by the parties made the warranty of the boiler a continuous warranty. Whether the parties, by their conduct, or otherwise, placed any construction on the warranty is a question of fact, to be passed on by the jury, from consideration of the evidence, and the assumption by the court that the parties construed the warranty as a continuing one, was prejudicial and reversible error.

Counsel for plaintiff contend that the warranty refers, either to the term the defendant took possession in April, 1903, or to May 1st, the day the term commenced.

Defendant's counsel contend that the warranty continued during the term. The words of the warranty are: "The boiler above referred to is warranted to stand a pressure of one hundred pounds, meaning a steam working pressure". There are no words in this warranty indicating that it is to be continuous. The words are, *"is* warranted", etc.

In 1 Parsons on Contracts, 6th ed., page 576, it is said: "For these words of warranty are usually subjected to a careful, if not a precise and stringent interpretation, as it is the fault of the buyer, who asks for or receives a warranty, if it does not cover as much ground and give him as effectual protection as he intended".

Lord v. Edwards, 148 Mass. 476, was a suit for breach of warranty of the test and color of sugar sold by the defendant to the plaintiff. The following facts appear in the opinion, from which we quote: "The contract between the parties is in the form of a letter, written at Boston by the agents of the defendants, addressed to the plaintiffs. The material parts of it are as follows: 'We have made sale to you of 1200 tons extra Manila sugars, about No. 9 D. S. in color, at 10.10 per ton f. o. b., and we understand it is your intention to load same on the Republic on her arrival at Manila. * * * It is further understood

that the sugar is sold on a basis of 88° pol'r with 3d. per cwt. per degree downward and fractions of degree in proportion. The sugars to be thoroughly sampled and tested on arrival. In due season we shall expect satisfactory bankers' credits at six months to be forwarded to our friends at Manila by cable'. Under this contract the defendants delivered free on board the Republic, at Manila, twelve hundred tons of sugar, which, as the jury have found, was equal to the test and standard required in the contract, if that test and standard are to be applied to the sugar at Manila. But, upon the arrival of the ship in New York the sugar was sampled and tested, and it was found that it failed to test 88 degrees by the polariscope, and was not equal in color to extra Manila sugar about No. 9, Dutch standard''. Held, that on delivery of the sugar on board the ship at Manila, and payment made therefor, the title passed to the plaintiff, and that the warranty applied to the delivery on board at Manila.

Luthy & Co. v. Waterbury & Co., 140 Ill. 664, was a suit by Waterbury & Co., in assumpsit, for the price of certain twine sold by that company to Luthy & Co. By the contract of sale, W. & Co. made this guaranty: ''Party of the first part hereby guarantee that this twine is in good condition and a merchantable article''. The trial court instructed the jury that the guaranty had reference to the condition and quality of the twine at the time the contract was made. The Supreme Court held the instruction correct, saying: ''We are, however, in view of all the provisions of the contract, inclined to the view that the court placed the proper construction upon it. If the sale was complete, and the title to the twine passed on the execution of the contract, as between the parties, then the guaranty related to the date of the contract'', and the court held that the parties intended that the title should pass when they executed the contract. In the present case the warranty is in the present tense equally with the guaranty in the case last cited. In the reservation of

rent clause in the lease in question, there is this provision: "$75 upon taking possession of said premises on or before May 1, 1903", so that there can be no doubt that the title passed on the execution of the contract, and this the defendant understood, and acted on by taking possession in April, 1903. It appears from the testimony of the defendant that, before he leased the premises, he went to the premises two or three times to inspect them, and spent about an hour each time examining them. He testified, however, that he had not any experience in boilers, and could not examine the boiler very well, and for that reason had the guaranty put in the lease. He examined with reference to the then condition of the premises and their appurtenances, and was so well satisfied that he was willing to take the lease and, as appears from the lease, he made an agreement with the plaintiff for an option to purchase the premises, and the sole reason why he required a warranty of the boiler was that because of his want of experience in boilers, he was not able to judge of its then condition, as he did of the other appliances, in respect of which he required no warranty, but relied on his personal examination.

The boiler was, as the evidence shows, a second-hand boiler, having been used for a considerable time before the lease was executed. Its future condition depended largely on the manner in which it would be used. It might be seriously injured by improper management, and this actually occurred in at least two instances; once by the fault of the engineer, as he admits, and once by the peremptory order of the defendant to fire it up when it was not sufficiently supplied with water, against the protest of the engineer. It is extremely improbable that the plaintiff would have been willing to warrant the boiler to stand even ordinary wear and tear, without repairs, for two years. Prior to 1904 the defendant complained that the boiler did not furnish sufficient power; and refused to pay the rent if plaintiff would not do something in respect to it, and plaintiff, in the meantime, was insisting on

payment. This dispute between the parties lasted, as the defendant testified, till February, 1904, when they made the following agreement:

"This agreement, made this February 18th, 1904, between L. W. Murphy and C. H. Lever, witnesses that settlement between them is amicably made and that said Lever agrees to pay rent now due under the lease, $233, at once. Upon that payment being made, no more rent will be due until the first of next month, March, 1904.

"Said Lever also agrees to pay during the month of March next the sum of $100, that being the purchase price of two cross-cut saws and all the shafting, belting and pulleys in the premises, (except the main line shaft which runs the full length of the building, and excepting the engine belt and two pulleys.)

"It is agreed that at the termination of the lease between them, the said Murphy shall have the option to repay to said Lever the sum of $100 and retain the articles so sold to said Lever and paid for by him, and in such case said Lever shall leave the same in said premises.

"The articles so sold for said $100 it is agreed consist of two cross-cut saws with countershafts and drive pulleys, one line shaft about 15 feet long with pulley located in fire-proof room, one line shaft and two hangers formerly located on the north wall, one cross shaft on lower floor and one shaft on upper floor with pulleys, hangers and belts, such being the material which remained in the building from the match factory equipment.

C. H. LEVER,
L. W. MURPHY,
By W. E. WILLIAMS".

This agreement was offered in evidence by the plaintiff, and the court, on defendant's objection, excluded it. The ruling was error. The very question which is here litigated, namely, whether it was incumbent on the plaintiff to maintain the boiler in proper condition, had been a matter of controversy between the parties, and the agreement was competent as showing a settlement of it. The defendant, himself, testified, that dur-

ing the year 1903 he did not pay the rent every month, that he objected pretty hard and refused to pay unless they would do something, and that the controversy lasted till February, 1904. This evidence shows that the defendant regarded the agreement of February as a settlement of the controversy. While we think that the agreement giving the defendant an option to purchase the premises, offered in evidence by the plaintiff, should have been admitted, we do not think its exclusion prejudicial error.

Plaintiff makes some objections to rulings and remarks of the court, which, probably, will not occur on another trial, and which, therefore, we do not think it necessary to pass on in this opinion.

The judgment will be reversed and the cause will be remanded.

*Reversed and remanded.*