American Banking Company, Appellee, v. General Motors Acceptance Corporation, Appellant.

Gen. No. 8,095.

Opinion filed November 21, 1927. Re-hearing denied January 4, 1928.

GOLDMAN, ALLSHOUSE & HEALY and WM. & P. J. SCHLAGENHAUF, for appellant; ROBERT G. DREFFEIN, of counsel.

EARL S. HODGES and HUBBARD & LEWIS, for appellee.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

This is an appeal from a judgment in trover for $2,411.82, recovered by the appellee, American Banking Company, against the appellant, General Motors Acceptance Corporation, in the circuit court of Adams county. Concerning the material facts involved in this controversy, the evidence shows that Frank W. Miller was engaged in the business of selling automobiles in the city of Quincy; that in the month of November 1925, he gave C. R. Hawkins, a sales agent of the Olds Motor Works Company of Lansing, Michigan, an order for the purchase of three Oldsmobile cars; that the Olds Motor Works Company accepted the order, and, pursuant to the order, shipped the three Oldsmobile cars ordered from their works at Lansing, Michigan, to Quincy, Illinois, and the cars arrived at Quincy over the C. B. & Q. Railroad about November 16, 1925. When the cars arrived at Quincy, it was found that they had been consigned to the appellant, and were held for delivery by the railroad company subject to the order of the appellant, but Miller was notified on the arrival of the cars, by the railroad company, and informed that the delivery of the cars to him was subject to the order and control of the appellant. The appellant insisted that before it would order a delivery

of the cars, he would have to satisfy certain financial and other demands, namely a cash payment of 10 per cent of the cost of the cars, plus the freight charges and the amount of excise tax thereon; that he would have to give a promissory note for 90 per cent of the cost of the cars, and also that he would have to execute a trust agreement to the appellant. The trust agreement which the appellant insisted on required Miller to keep the cars in storage brand new, and not to operate them for demonstration purposes, except on explicit instructions from the appellant, and except for the purposes of driving the cars from the railroad freight depot to his place of business in Quincy, also that he would return the cars to the appellant on demand. The trust agreement also provided that Miller would not sell, loan, deliver, pledge, mortgage or otherwise dispose of the cars, except after full payment of the cars and a release of the same by the appellant from the trust agreement. Appellant also required of Miller that before it would consent to the delivery of the cars to him that he pay $1,432 to appellant, which sum it claimed Miller owed appellant by virtue of an understanding had in reference to other cars previously handled by Miller. Miller thereupon in order to raise the necessary money to procure a delivery of the cars, arranged a sale of the cars, one car to Albert Y. Cook and another car to Earl Hagenbaumer, and the remaining car to Arthur Walford. Under the terms of the contract of sale to Cook, he gave his note secured by chattel mortgage for $986.08 in part payment of the price of the car, and Hagenbaumer in part payment of his car gave his note secured by chattel mortgage for $784.08, and Walford gave his note secured by chattel mortgage for $851.28 for the car purchased by him. The sale of the cars to Cook and Hagenbaumer occurred on November 20, 1925; and the sale to Walford occurred on November 23, 1925. All these sales took place after the arrival of the cars at

Quincy, but while the cars were still in the freight house of the railroad, awaiting delivery to Miller, and before the trust agreement to appellant was executed by Miller to appellant. The notes and chattel mortgages which were taken pursuant to the contracts of sale were duly executed and recorded and thereupon were assigned to the appellee, and the appellee in consideration thereof advanced to Miller the amount of money necessary to satisfy the pecuniary demands of the appellant, namely, the $1,432 required to satisfy a previous indebtedness of Miller which appellant claimed, and the $308 to pay the 10 per cent of the purchase price of the cars, and the amount necessary to liquidate the freight charges and excise tax against the cars, and Miller immediately paid over these sums to the appellant and he gave his note for the balance of the purchase price as required by the appellant. Miller testified at the trial that after he had complied with the money demands of the appellant and had given his promissory note for the balance of the purchase price, the cars were ordered released by the appellant and were unloaded and delivered to him, and that on the same day after the delivery of the cars, he signed the trust agreement for the appellant. After the cars had been delivered, they were taken to Miller's place of business in Quincy, and thereupon within a day or two the appellant seized the cars, ostensibly acting by virtue of its rights acquired under the trust agreement, and the cars were removed from Miller's place of business by appellant, and it afterwards disposed of the cars by a resale to the Olds Motor Works Company. After the appellant had seized and repossessed itself of the cars, the appellee sued out a writ of replevin, claiming rights of property in, and the right to the possession of, the cars under the terms of the chattel mortgages which it held as assignee; but the cars could not be found and could not be recovered under the writ. Thereupon the appellee changed the action to recover damages in

trover, alleging a wrongful conversion of the cars by the appellant.

Under the facts stated, it seems clear as a matter of law that after the appellant had released the cars for delivery to Miller, Miller's title as owner of the cars became complete; that this title at the same time passed to the purchasers of the cars mentioned, and that the lien of the chattel mortgages given by the purchasers of the cars in conformity with the bargain and sale of the cars by Miller became legally effective. It is contended by the appellant that the chattel mortgages under which the appellee claims the rights of recovery and of possession of the cars in question are void because there had been no delivery of the cars to the purchasers at the time they executed the chattel mortgages. It may be said concerning this contention that the general rule of the common law in the matter of a bargain and sale of chattels is, that "as between the vendor and vendee no actual delivery, symbolical or otherwise, is necessary—the completion of the bargain being all that is requisite to pass the title." *Wade v. Moffett,* 21 Ill. 111. As illustrative of the doctrine referred to, in the above case, the court refers to Noy's Maxims, which are quoted by Lord Ellenborough, C. J., in *Hinde v. Whitehouse,* 7 East, 558, and are illustrative of this point: "If I sell my horse for money, I may keep him until I am paid; but I cannot have an action of debt until he be delivered; yet the *property* of the horse is *by the bargain* in the bargainor or buyer. But if he do presently tender me my money, and I do refuse it, he may take the horse, or have an action of detainment. And if the *horse die in my stable between the bargain and delivery,* I may have an action of debt for my money, because by the *bargain* the property was in the buyer." 2nd Blackstone's Com. 448. The rule of law concerning the element of delivery in a bargain and sale announced in *Wade v. Moffett, supra,* has been uniformly followed by courts of appeal in this

State in a number of cases where a question of the necessity of delivery was involved. *Cruikshank v. Cogswell,* 26 Ill. 366; *Holliday v. Burgess,* 34 Ill. 193; *Hodges v. Hurd,* 47 Ill. 363; *Frost v. Woodruff,* 54 Ill. 155; *Seckel v. Scott,* 66 Ill. 106; *Shelton v. Franklin,* 68 Ill. 333, 336; *Barrow v. Window,* 71 Ill. 214; *Webster v. Granger,* 78 Ill. 230; *Straus v. Minzesheimer,* 78 Ill. 492; *Luthy & Co. v. L. Waterbury & Co.,* 140 Ill. 664; *Union Stock Yard and Transit Co. v. Mallory, Son & Zimmerman Co.,* 157 Ill. 554; *Loftis v. Behrens,* 187 Ill. App. 598.

Under the facts disclosed by the record, and in view of the law applicable to them as emphasized in the authorities above cited, the case under consideration may properly be summed up as follows: That Frank W. Miller bought the three auto cars in question from the Olds Motor Works Company of Lansing, Michigan, which the company shipped to Quincy, consigned to the appellant but for delivery to Miller subject, however, to such conditions as might be imposed by appellant for delivery of the cars; that appellant refused to order a delivery of the cars to Miller until he had satisfied certain financial and other demands made by appellant as a condition precedent to such delivery; that in order to enable Miller to comply with the appellant's pecuniary demands, he sold the three cars in advance of their delivery, selling one to each of three customers, who respectively gave Miller in payment, or part payment therefor, their promissory notes secured by chattel mortgages, which were duly executed and recorded, and Miller thereupon assigned the notes and mortgages to the appellee in consideration of procuring from the appellee the money to satisfy the pecuniary demands of appellant, and Miller satisfied these demands with the money procured from the appellee by the assignments of the mortgage indebtedness to the appellee and thereby secured delivery of th cars, also that this delivery of cars occurred be-

fore the trust agreement was executed and delivered by Miller to the appellant.

The appellant thereafter seized the cars and appropriated them. In view of these facts, we conclude that the chattel mortgages held by the appellee were valid liens on the respective cars involved at the time the appellant seized them; that appellant had legal notice of such liens at the time of such seizure from the records of the chattel mortgages; that the liens of the chattel mortgages were prior to the rights, if any, of the appellant, to repossess itself of the cars acquired under the trust agreement; that therefore such seizure by appellant was wrongful as to the appellee; that by virtue of its prior lien and under the terms of the chattel mortgages appellee had the legal right to retake the cars under the writ of replevin which was sued out, and had at the time of suing out the writ the right of property in, as well as the right to the possession of, the cars, and that appellant's subsequent conversion of the cars therefore gave the appellee a legal right of recovery of the damages resulting to appellee from appellant's wrongful conversion of property.

It is also contended by the appellant that there was error in certain instructions pertaining to the doctrine of estoppel. The doctrine of estoppel as applicable to a certain phase of the case is defined in these instructions. It was contended by the appellee on the trial that there was evidence to show that appellant had knowledge, through its representative or agent, that the appellee was advancing the money which was to be paid to appellant for a release of the cars to Miller; that the appellee was advancing this money for this purpose, on the strength and value of the lien of the chattel mortgages in question, which were to be assigned to appellee; that inasmuch as the appellant received the benefits resulting from the transaction which provided a lien for appellee, the appellant was

392

estopped to deny appellee's right to the lien under the circumstances referred to. While the instructions are not strictly accurate in presenting the question of estoppel involved in the controversy the jury could not have been misled thereby into an erroneous conclusion concerning the estoppel, if any, which was involved in the case. The doctrine of estoppel at most was merely incidental to the main and real issues in the case, namely, whether the chattel mortgages held by appellee as assignee were valid liens on the cars in question, and whether the liens were prior to the right of the appellant under the trust agreement, to repossess itself of the property and appropriate the same.

We find no reversible error in the record, and the judgment is therefore affirmed.

*Judgment affirmed.*