## C. I. T. Corporation, Appellant, v. American National Bank, Appellee.

### Gen. No. 8,385.

Opinion filed February 3, 1930.

MILLER & MILLER and STEVENS & HERNDON, for appellant.

PETER MURPHY, for appellee.

MR. PRESIDING JUSTICE ELDREDGE delivered the opinion of the court.

The C. I. T. Corporation, appellant, on November 17, 1928, sued out of the circuit court of Logan county a writ of replevin to recover from American National Bank, appellee, the possession of an Essex sedan. At the conclusion of the evidence adduced on the trial the court directed the jury to return a verdict finding the right of possession of the automobile to be in the appellee. Judgment was rendered upon the verdict to reverse which this appeal is prosecuted.

In July 1928, F. A. Greenlaw was engaged in the business of retailing automobiles in the City of Lincoln and operated under the name of Hudson-Essex Sales Company. Greenlaw had in his employ one Oscar C. Foote who did general work about the place of business and assisted in the sales of cars. On September 26, 1928 the Hudson Motor Car Company of Detroit, Michigan shipped to its own order at Lincoln three automobiles, one of which was the Essex sedan in controversy in this suit. The Hudson Motor Car Company mailed the bill of lading for this shipment, with sight draft attached for the sum of $1,736.25, to the appellee, American National Bank, at Lincoln. The cars arrived at Lincoln about October 1 and remained on the track of the Illinois Terminal R. Company at that place until the evening of October 11. It appears Greenlaw was not financially able to pay the amount of the sight draft. On October 8, Foote and the Hudson-Essex Sales Company executed a conditional sale contract for the Essex sedan in question and at the same time Foote executed his promissory note for the sum of $592.20 payable to the order of the Hudson-Essex Sales Company in 12 equal monthly installments. Greenlaw took this note and conditional sale contract to the office of appellant in Bloomington, indorsed them to appellant without recourse and the latter paid Greenlaw $540. This transaction occurred between 1:00 and 1:30 o'clock on the afternoon of October 11. Greenlaw then returned to

Lincoln, went to the bank of appellee and by agreement therewith executed three notes, two for $500 each and one for $450 payable to appellee within 10 days and also signed three trust receipts. One of the notes and one of the trust receipts was executed separately for each respective automobile covered by the bill of lading. Upon the execution of the three notes and the three trust receipts and the payment of the $540 received by Greenlaw from appellant the sight draft was marked paid and the bill of lading was delivered by appellee to Greenlaw. The latter presented the bill of lading to the railroad company, paid the latter its freight and demurrage charges and the excise tax and took possession of the automobiles. All the cars were then taken to the place of business of Greenlaw, who was doing business in the name of Hudson-Essex Sales Company as above mentioned. Two of the automobiles were subsequently sold and the notes covering them were paid by Greenlaw to appellee but the Essex sedan was not sold and the note covering that car was not paid. It was kept in the showroom of the Hudson-Essex Sales Company and used as a demonstrating car. Sometime between November 5 and November 10 appellee retook possession thereof by virtue of the provisions of the said trust receipt and thereupon appellant brought this replevin suit to recover possession of the same.

This so-called trust receipt provides that the automobile is received by Greenlaw in trust under the orders and to the use of appellee; that Greenlaw has the right and privilege to sell said motor vehicle for the account of appellee and receive from it as his own profit all the money obtained for the sale over and above the principal and interest then due on the attached promissory note; that the right to receive such money in excess of the principal and interest is the consideration for the trust; in case of sale Greenlaw covenants and agrees to transmit the amount of prin-

cipal and interest then due on the said note to appellee to be applied in payment thereof; that Greenlaw shall not loan, rent, deliver, mortgage, pledge or otherwise dispose of said motor vehicle nor operate it for demonstration or otherwise; that said motor vehicle shall not be offered and negotiable receipt issued and received therefor; that Greenlaw is to maintain and keep in a conspicuous place upon said motor vehicle a tag bearing the words, "Held in trust by us," or "Property of the American National Bank, Lincoln, Illinois"; that any sale of the motor vehicle is but for account of said bank and that said motor vehicle or any proceeds thereof shall be kept separate and capable of identification as the property of said bank; that the bank may at any time cancel the trust and take possession of said motor vehicle which is to be returned to said bank upon its demand.

The conditional sale contract between Greenlaw and Foote is also in the nature of a receipt and is executed by Foote only and in so far as it is pertinent to the issues here is as follows: "To HUDSON-ESSEX SALES Co. CITY——LINCOLN——STATE——ILL.

"I . . . do hereby acknowledge having this day received from you the following MOTOR VEHICLE . . . with its equipment; . . . for which I . . . agree to pay you on the following terms and conditions. . . .

"It is agreed that the title to, ownership in, and right of possession of said chattel are vested in you and your assigns until said indebtedness and all other sums of money payable to you, whether evidenced by note . . . or otherwise, also any judgments which you, your successors or assigns may obtain therefore, shall have been fully paid in money, at which time owner shall pass to me. . . .

"It Is FURTHER AGREED that said chattel shall at all times, while in my . . . possession, be at my . . . risk and loss, but that loss, injury or destruc-

tion of said chattel shall not operate in any manner to release me . . . from payment as provided herein, and the giving of notes or renewals or extensions thereof shall not release me . . . from the conditions of this agreement. If any of my . . . indebtedness shall become due and remain unpaid in whole or in part, or if said chattel is removed or attempted to be removed from the State in which I . . . now reside, or to be otherwise disposed of, or if I . . . shall sell or encumber or shall attempt to sell or encumber said chattel, or hire out said chattel or use the same to carry passengers for hire, or in case of misuse or abuse thereof, or should said chattel be used for the bartering, storage or transportation of intoxicating liquor contrary to the provisions of the so called Volstead Act, . . . or whenever you shall deem the debt insecure, . . . the full amount unpaid hereunder, including any note given, shall become due and payable forthwith and you or your assigns may, without any previous notice or demand of performance, and without legal process enter any premises where said chattel may be found and take possession thereof, after which you may at your option, make such disposition of said chattel as you shall deem fit, and all payments made by me . . . shall be retained by you as liquidated damages for the use of said chattel while in my . . . possession, and not as a penalty. Or said chattel may be with or without notice sold either at public or private sale, and the proceeds, less the expense of taking, removing, holding, and selling said chattel, shall be credited upon the amount unpaid hereunder; or without such sale there may be credited upon the amount unpaid the fair market value of said chattel at the time of repossessing same, and in either event, in consideration of the use and depreciation of said chattel, I . . . promise and agree to pay the balance forthwith. I . . . agree to pay promptly, when due, all taxes and assessments which may be

levied upon said chattel. I . . . expressly waive as against this agreement all exemptions and homestead laws, and all claims for damages of whatever nature, also any and all provisions of law wherein and whereby it is required that any sum of money shall be repaid to me . . . or that said chattel shall be sold at public or private sale, and any part of the proceeds accounted for, or paid over to me. . . .

OSCAR C. FOOTE. L. S.''

It is claimed by appellant that upon the delivery of the bill of lading to Greenlaw by appellee the title to the cars passed absolutely to Greenlaw and from him to appellant by virtue of the assignment of the conditional sale contract by Greenlaw to it; that the trust receipt was in the nature of a chattel mortgage, was not recorded and had no validity as against the rights of third parties; also, that if the trust receipt was not in fact a chattel mortgage, it was a secret lien which lost its validity by appellee delivering the automobile to Greenlaw and permitting him to offer if for sale in the regular course of business in which he was then engaged.

Appellee contends that at the time that the conditional sale contract was executed between Greenlaw and Foote and at the time it was assigned to appellant, the bill of lading had not been delivered to Greenlaw and that he at said time had neither possession nor title to the automobile and could convey no title either to Foote or to apellant; that when Greenlaw executed his notes and paid the cash to the appellee bank in order to obtain the possession of the bill of lading, the bank had no knowledge of the execution of the conditional sale contract or its assignment to appellant and that the whole transaction between Greenlaw, Foote and appellant was a fraud upon appellee.

The proofs are conclusive that the conditional sale contract and its assignment to appellant took place before Greenlaw had obtained from appellee the bill of

lading and also that when appellee delivered the bill of lading to Greenlaw it had no knowledge of those transactions. It is submitted by appellant that the facts in this case are substantially the same as they were in *American Bank Co. v. General Motors Acceptance Corp.,* 248 Ill. App. 385 and that our holding in that case is conclusive upon the issues in the case at bar. In that case, Miller to whom the cars had been sold in order to raise the money to pay for them sold them to several individuals and took chattel mortgages to secure the balance of the payments thereon which mortgages were duly filed of record and of which the banking company had full knowledge or was charged with notice thereof by law when it delivered the bill of lading to Miller and we held under these facts: "Under the facts stated, it seems clear as a matter of law that after the appellant had released the cars for delivery to Miller, Miller's title as owner of the cars became complete; that this title at the same time passed to the purchasers of the cars mentioned, and that the lien of the chattel mortgages given by the purchasers of the cars in conformity with the bargain and sale of the cars by Miller became legally effective." No such facts appear in this case.

The conditional sale contract assigned to appellant was as much a secret lien as the so-called trust receipt held by appellee and contained more of the elements usually found in a chattel mortgage than in the trust receipt which is more in the nature of a contract of agency. In the trust receipt it was provided that the car in question should be marked as being held in trust for appellee and while the evidence does not show whether this was done, in all probability it was not because at the time Greenlaw signed the trust receipt he had already attempted by the conditional sale contract to convey the car to Foote and had assigned the contract to appellant.

Subsections (1), (2) and (3) of section 20 of the Uniform Sales Act, Cahill's St. ch. 121a, ¶23, are as follows, "(1) Where there is a contract to sell specific goods, or where goods are subsequently appropriated to the contract, the seller may, by the terms of the contract or appropriation, reserve the right of possession or property in the goods until certain conditions have been fulfilled. The right of possession or property may be thus reserved notwithstanding the delivery of the goods to the buyer or to a carrier or other bailee for the purpose of transmission to the buyer.

"(2) Where goods are shipped, and by the bill of lading the goods are deliverable to the seller of (or) his agent, or to the order of the seller or his agent, the seller thereby reserves the property in the goods. But if, except for the form of the bill of lading, the property would have passed to the buyer on shipment of the goods, the seller's property in the goods shall be deemed to be only for the purpose of securing performance by the buyer of his obligations under the contract.

"(3) Where goods are shipped, and by the bill of lading the goods are deliverable to the order of the buyer or of his agent, but possession of the bill of lading is retained by the seller or his agent, the seller thereby reserves a right to the possession of the goods as against the buyer."

It is clear that under these provisions of the statute appellee had a right to reserve the possession of the car in itself even though it was delivered to Greenlaw and that the execution of the conditional sale contract by Greenlaw and Foote prior to the execution of the trust receipt by Greenlaw and appellee, who had no knowledge thereof, could not have the effect of destroying the right of possession specifically given to appellee by the statute. The acts of Greenlaw and Foote if not actually fraudulent amounted to at least a con-

structive fraud. Section 23 of the act, Cahill's St. ch. 121a, ¶ 26, provides that subject to the provisions of the act where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell. When Greenlaw attempted to sell this car to Foote by the conditional sale contract and when he assigned the contract to appellant he did not have possession of the car nor the right to its possession. The actual possession and the right of possession thereof was at that time in appellee, consequently appellant procured no greater rights to the possession of the car by the assignment of the conditional sale contract to it by Greenlaw than Greenlaw himself had which were none at all at that time and appellee who occupied the position of owner of the car did nothing by its conduct to preclude it from denying Greenlaw's authority to sell. It had no knowledge that Greenlaw had made the conditional sale contract, and the car was never removed from Greenlaw's place of business but was kept there for the purposes of exhibition and sale in the regular course of business and when default was made by Greenlaw in the payment to appellee for the car it had the right to repossess itself of the same under the terms of the trust receipt.

The judgment of the circuit court is affirmed.

*Affirmed.*