SCHNITZER STEEL PRODUCTS CO., a corporation of the State of Oregon, v. HENRY C. EASTBURN & SON, INC., a corporation of the State of Delaware.

(*August* 31, 1951.)

CAREY, J., sitting.

*Leslie H. Gluckman* for plaintiff.

*W. Thomas Knowles* (of Knowles and Allmond) for defendant.

Superior Court for New Castle County, No. 433, Civil Action, 1950.

CAREY, J.:

The purpose of this suit is to recover possession of a large Bay City crane, or its value. Ownership is claimed by both parties. It is a case where one of two innocent parties must suffer loss caused primarily by the default of a third person.

In February 1949, plaintiff made a contract for the sale to one Richard Thorpe, who traded under the name of Thorpe's Machine Company, of several items of large machinery, including the crane here involved. In the same month, plaintiff shipped this machinery from Portland, Oregon, by railroad to its own order at May's Landing, New Jersey, Thorpe's place of business. The bill of lading, to which were attached sight drafts drawn

against Thorpe's Machine Company, was duly forwarded to a bank in May's Landing. The crane arrived in that city on March 24th, but Thorpe did not honor the sight drafts and the bank accordingly retained the bill of lading. The crane and the other machinery remained on the freight car at the railroad company's siding.

On April 28, a bill of sale was executed by "Thorpe's Machine Co., Richard Thorpe" selling the crane to defendant. This paper was a printed form containing an express warranty of title. The blank spaces were filled in very unskillfully. Defendant's affidavits aver that its check for $8,000 was given to Thorpe in part payment for the crane on that same day, and the other part of the consideration to wit, a bulldozer, was delivered to Thorpe the following day. This sales contract was made in Delaware. It is alleged on belief that defendant's check for $8,000 was actually credited upon Thorpe's general account with plaintiff, but this allegation is denied by plaintiff.

On June 14th, Thorpe had still failed to honor the sight draft and plaintiff accepted from him a conditional sale contract for $7,000 payable October 15, 1949, by which title to the crane was reserved in plaintiff until said amount was paid. The bill of lading was thereupon given to Thorpe. This conditional sale agreement was filed in the office of the Clerk of Atlantic County, New Jersey, on June 24, 1949.

On June 24, defendant's agent went to May's Landing for the crane, obtained the bill of lading from Thorpe, and got the crane after paying the railroad company's freight and demurrage charges.

The complaint simply alleges property and right of possession in the plaintiff and unjust detention by the defendant. The answer denies plaintiff's title and avers property in the defendant. It mentions the conditional sale by plaintiff to Thorpe and the sale by Thorpe to defendant. It denies that plaintiff is protected by the conditional sale agreement on the ground that

Thorpe was a recognized machinery dealer in New Jersey and was known by plaintiff to be such, that plaintiff expressly and impliedly agreed to resale of the crane by Thorpe prior to compliance with the conditional sale contract, and that defendant was an innocent purchaser for value in the ordinary course of business. Plaintiff's reply admits that Thorpe got the crane from it under the contract of conditional sale, but denies all other averments in the answer.

Affidavits filed for the defendant outline its version of the facts in considerable detail. They contain nothing, however, to indicate that plaintiff *expressly* authorized the resale of the crane, nor do they say in so many words that the resale was *impliedly* authorized. They do include statements to show that Thorpe's Machine Company was a dealer in heavy construction equipment and that plaintiff knew this. Although plaintiff's pleading denies express or implied permission to resell, as well as knowledge that Thorpe was an equipment dealer, its affidavits do not contain any such denials. Thus we have a sworn statement from one side as to a certain fact, highly important under defendant's theory of the case, contradicted only by the unverified denial in plaintiff's pleading, which is signed only by plaintiff's attorney. This averment, to wit: that plaintiff knew Thorpe was a regular agent or dealer in construction equipment, is important because it furnishes the whole foundation for defendant's argument.

Somewhat the same situation is true with reference to the statement that defendant was an innocent purchaser for value from Thorpe in the usual course of business. This is denied in the pleading, but not in any affidavit. The question therefore arises whether the unsworn pleadings alone may be relied upon to show the existence of a dispute of fact as against the verified statements of the other party. This question has been considered by the Federal Courts and has usually been answered in the negative. In *Board of Public Instruction v. Meredith*, (5 *Cir.*) 119 *F.* 2d 712, 713, the answer stated that defendant could not admit

or deny certain averments because of lack of knowledge. Plaintiff filed affidavits in support of his complaint and defendant filed no opposing affidavits or evidence of any kind in rebuttal. The Court said: "The intent and purpose of Rule 56 [*Fed. Rules Civ. Proc. 28 U. S. C. A.*] is to promote the prompt disposal of actions in the interest of justice where there is no genuine issue as to any material facts. * * * [No fact] remained to be shown except that the coupons were actually clipped from the genuine bonds and the amount for which judgment should be entered. It was entirely in keeping with the letter and spirit of Rule 56 that this could be done by *ex parte* affidavits which were not offset by opposing affidavits".

In *Hemler v. Union Producing Co. (D. C.)* 40 *F. Supp.* 824, 834, defendant moved for summary judgment and filed affidavits to show the market price of gas. Papers were filed on plaintiff's behalf, sworn to only by his counsel, disputing this market price. The Court made these pertinent observations:

"I do not believe that the plaintiff can take the arbitrary position that because of the complicated nature of the case or the difficulty of showing the existence of facts in his favor, that he will simply deny those submitted by defendant, and offer none of his own. At the same time, neither do I think that he has to submit all of his evidence. It is sufficient if he shows that he has evidence of a substantial nature, as distinguished from legal conclusions, to dispute or contradict that of the defendant on the material factual issues of the case. * * *

"In a situation of this kind, the need is just as great to make a substantial showing as to the availability of countervailing evidence as it is in the trial itself, because the purpose of the rule is to avoid extended and useless trials to develop facts which are not really disputed. Outside of counsel's affidavit to the answer, he offers only one other, and that is, of the plaintiff himself, who simply says he knew nothing about the gas business 'and knows nothing about market price in the Richland field or

elsewhere'. He has offered no sworn opinions by anyone familiar with prices in the Richland field, such as those tendered by defendant, except that of his counsel, who gained his opinion not by producing or dealing, but by handling lawsuits, and it is evident that this opinion is based upon pipeline contracts and prices which were disclosed at the trial of the first *Pardue* case and in subsequent trials.

"In these circumstances, it does not seem to me that there is any substantial contradiction of the proof offered by defendant * * *".

As indicated above, defendant's whole argument is based upon the truth of the mentioned averments. Aside from the answer, nothing in the record suggests any disagreement as to their truth. No request has been made for leave to file additional proofs. For purposes of the present motion they will be accepted as established fact. This holding is in accord with the decisions of the Federal Courts in the District of Delaware and the Third Circuit. *Allen v. Radio Corporation of America*, 47 *F. Supp.* 244; *Seward v. Nissen*, 2 *F. R. D.* 545; *Geller v. Transamerica Corporation*, 53 *F. Supp.* 625, *affirmed* 151 *F.* 2d 534.

Plaintiff's sole argument is an attack upon defendant's title. It is to the effect that the only purported sale of the crane to defendant was the paper writing of April 28, 1949; that Thorpe then had no title, or indicia thereof, and no right of possession; that defendant acquired no title under that agreement; and that the delivery of possession on June 24 did not constitute a sale. There is no doubt that the original shipment to plaintiff's own order, coupled with the retention of the bill of lading, conferred no property or right of possession upon Thorpe. *Sec. 20 Uniform Sales Act, section* 5999, *Revised Code of Delaware* 1935. Up until June 14th, Thorpe clearly could not have transferred title or even possession to any one, and the agreement of April 28 did not do so at the time of *its* execution. But on June 14, the situation changed. Then Thorpe, by a new

agreement with plaintiff, or a modification of the old one, became the conditional vendee entitled to possession against the world subject only to the railroad company's charges, and to plaintiff's rights under the conditional sale agreement. The subsequent delivery of the crane to defendant by Thorpe clearly made it impossible for Thorpe thereafter to question defendant's title to it. 1 *Williston on Sales, Rev. Ed.,* 369 *etc.* Ignoring for the moment the reservation of title in the conditional sale agreement, it would likewise be clear that the plaintiff could not prevail in this action, for it could then show no property in itself. It would make no difference in such event that the purported bill of sale preceded Thorpe's ownership.

■ Obviously, plaintiff's present claim depends upon the conditional sale agreement, not upon the original contract with Thorpe, for the latter deal was modified or abandoned and the former substituted therefor. The inquiry here narrows down to the question of whether the reservation of title in the recorded conditional sale contract is valid against defendant, assuming non-payment of the purchase price by Thorpe. The answer to this inquiry depends upon the law of New Jersey, where that contract was made and recorded. In that state, the *Uniform Conditional Sales Act* is in force. *N. J. S. A.* 46:32-1 to 46:32-33. Section 9 thereof reads as follows: "When goods are delivered under a conditional sale contract and the seller expressly or impliedly consents that the buyer may resell them prior to performance of the condition, the reservation of property shall be void against purchasers from the buyer for value in the ordinary course of business, and as to them the buyer shall be deemed the owner of the goods, even though the contract or a copy thereof shall be filed according to the provisions of this chapter". *N. J. S. A.* 46:32-12.

The highest court of that State has held that this Section protects an innocent purchaser for value even though the recorded contract required written permission for resale. *Finance Corp. v. Jones,* 98 *N. J. L.* 165, 119 *A.* 171. It was there pointed

out that the evidence was sufficient to justify the jury's finding that there was a well-understood arrangement between the parties that the conditional buyer should dispose of the property in the ordinary course of business. The case, of course, was not before the Court on a motion for summary judgment.

The situation here presented is one where permission to resell is claimed to be inferable from the circumstances surrounding the transaction. More particularly, it is said to be the natural inference to be drawn from the delivery of the crane, or the bill of lading, to Thorpe, who was known by plaintiff to be a dealer in that very type of equipment. The majority rule in such a situation is that the resale in the ordinary course of business to a good faith purchaser for value passes title to him as against the original vendor, regardless of whether the contract is recorded. 3 *Jones on Conditional Sales* (*Bowers Ed.*) 181. See annotations in 47 *A. L. R.* 94 and 88 *A. L. R.* 113. Other than the case of *Finance Corp. v. Jones, supra,* I have found no New Jersey opinion as to what facts and circumstances are sufficient to warrant an inference of authority to resell. Ordinarily, it is reasonable to presume such authority from the fact that the conditional sale was made to a dealer in the particular type of property concerned. In such a case, it is no more than fair to cast the burden of negativing authority to resell upon the original vendor. Under present day financing conditions, practical reasons justify the presumption; moreover, it recognizes and gives effect to actual intention of the parties in cases of sales to dealers.

In the present instance, the established facts warrant the presumption that Thorpe had authority to resell, and nothing in the record sufficiently rebuts it or raises an issue of fact concerning it. Plaintiff's conduct in accepting the conditional sale contract in lieu of full payment, and turning over the bill of lading to one known by it to be a dealer, made it possible for that dealer to sell the crane to defendant, an innocent purchaser for value in the ordinary course of business. The loss should fall upon the party which made the loss possible. Section 9 of

the *Uniform Conditional Sales Act* applies and renders void the reservation of title in the plaintiff as against defendant. This result is not inconsistent with Section 23 of the *Uniform Sales Act* which expressly provides that an owner's conduct may preclude him from denying the seller's authority to sell.

Two cases are relied upon by plaintiff. The first, *Hansen v. Shepherd*, 154 *Minn.* 277, 191 *N. W.* 599, is distinguishable from this one for at least two reasons: (1) it did not involve a conditional sales agreement, and in fact no property whatever had passed to the dealer; (2) the sale by the dealer was a sale of his entire business, rather than a sale of one item of goods in the ordinary course of business.

The second case, *C. I. T. Corporation v. American National Bank*, 256 *Ill. App.* 38, may or may not be in conflict with the holding herein. The Court found constructive, if not actual, fraud between the dealer and the purchaser, and its decision seems to be based largely on that finding. In any event, two other cases in that same jurisdiction are far more like the present one and the rulings therein harmonize with the views herein expressed. *National Bond & Investment Co. v. Shirra*, 255 *Ill. App.* 415; *Gordon Motor Finance Co. v. Aetna Acceptance Co.*, 261 *Ill. App.* 536. Other cases following similar principles are *Kearby v. Western States Securities Co.*, 31 *Ariz.* 104, 250 *P.* 766; *O'Loughlin v. Erwin M. Jennings Co.*, 107 *Conn.* 365, 140 *A.* 758; *Webber & Beckett v. LeClair*, 118 *Cal. App.* 423, 5 *P.* 2d 449; *Commercial Credit Co. v. Parker*, 101 *Fla.* 928, 132 *So.* 640; *South Bend Iron Works v. Reedy*, 5 *Penn.* 361, 60 *A.* 698.

Plaintiff's motion will be denied and defendant's motion will be granted.