Gordon Motor Finance Company, Appellant, v. Aetna Acceptance Company et al., Appellees.

Gen. No. 34,659.

Opinion filed May 13, 1931.

SHORT, ROTHBART, WILLNER & LEWIS, for appellant; SEYMOUR LEWIS and WHARTON PLUMMER, of counsel.

WILLIAM S. KLEINMAN, for appellees.

MR. JUSTICE FRIEND delivered the opinion of the court.

An action in replevin was instituted by Gordon Motor Finance Co., as plaintiff, against Aetna Acceptance Co., as defendant, to recover possession of a certain used Packard automobile of the value of $1,000. The cause was tried before the court, without a jury, and resulted in a finding and judgment of title to the property in defendant.

The essential facts disclose that both parties to this proceeding are finance companies, engaged in purchasing negotiable instruments secured by conditional sales contracts on automobiles; that the Packard automobile

in question had been taken in trade by the Auburn-Woodlawn Motors, Inc., of which one H. J. Monroe was president, on account of the purchase by one of his customers of a Cord automobile; that this Packard automobile was then sold by the Auburn-Woodlawn Motors, Inc. on a time payment plan and the notes purchased by the Gordon Motor Finance Company; that the purchaser failed to make his payments as required, and the Gordon Motor Finance Company thereupon repossessed the car and sold the same to said H. J. Monroe, either individually or as president of the Auburn-Woodlawn Motors, Inc. for $1,000, upon a conditional sales contract, under which payments aggregating $300 were made either by Monroe or his company, leaving a balance of $700 due plaintiff at the time of the seizure; that thereafter Monroe turned the Packard car in to his company, which resold the same to one Harold Mandelbaum, also under a conditional sales contract, which was purchased by Aetna Acceptance Company, which became the owner thereof for value, in due course of business. Both plaintiff and defendant now claim priority of title to the Packard car under their respective conditional sales contracts.

Under the doctrine announced in *Sherer-Gillett Co. v. Long,* 318 Ill. 432, construing section 23 of the Uniform Sales Act (Cahill's St. ch. 121a, ¶ 26), the Gordon Motor Finance Co., as conditional vendor, retained title to the car as against the purchaser from the conditional vendee, unless it was by its "conduct precluded from denying the seller's authority to sell," as provided by section 23. The determination of the question of estoppel under the statute depends upon the facts and circumstances attending the sale. With respect to this question, the record discloses that Auburn-Woodlawn Motors, Inc. was engaged in the sale of automobiles in the City of Chicago, and for a period of about four years prior to the transaction in question

H. J. Monroe was connected with that company; that Monroe had bought three or four used cars from Aetna Acceptance Co., and about four or five from Gordon during the year 1929; that during the four years he was in business Monroe signed hundred of conditional sales contracts, and he testified that in all these transactions he had no recollection of ever having signed his individual name, but always signed that of the company; that on the occasion of the sale in question Mr. Gordon called him to his office to consider the sale of some automobiles, and after considerable bargaining, Monroe purchased two cars, including the Packard. The original conditional sales contract signed by Monroe was lost or mislaid and a controversy exists as to the manner in which the original was signed. Monroe asserts that he signed the name of his company, and plaintiff insists that Monroe signed the contract individually. To support its contention that this was a sale to Monroe and not to the Auburn-Woodlawn Motors, Inc., with which Monroe was connected, plaintiff offered to prove a conversation between Gordon and Monroe, in which the latter is alleged to have said that he wanted the car to transport Mr. and Mrs. Allison, officials of his company, to and from their home, and that the Packard automobile was well suited for that purpose. The court sustained an objection to the offer and we think properly so, because defendant, not having been a party to the conversation, cannot be bound thereby. Moreover, Gordon had full knowledge of Monroe's business, based upon past transactions with him, and of his connection with the Auburn-Woodlawn Motors, Inc., and if he desired to limit the sale of this particular car to Monroe's personal use, he should have so stipulated in the contract. By selling the car to Monroe, who was engaged in the business of reselling cars in connection with his company, Gordon gave the latter an opportunity to perpetrate a fraud

upon an innocent purchaser. Section 23 of the Uniform Sales Act, Cahill's St. ch. 121a, ¶ 26, was evidently enacted to afford protection to vendors under conditional sales contracts who could not reasonably foresee or anticipate a resale of chattels before the same were fully paid, and who through no act of theirs could be said to have made the perpetration of fraud on innocent purchasers from a conditional vendee possible. However, we do not believe the protection of the statute should be extended to those who by their own acts place the indicia of ownership in a person or corporation under circumstances where it can be reasonably foreseen that fraud on innocent persons will result therefrom. The parties knew each other, they had had previous transactions together, and plaintiff knew that Monroe and his company were engaged in the business of selling cars; therefore it was reasonable to anticipate a resale by Monroe, who had on prior occasions through his company made purchases from Gordon for the purpose of resale. Considering the evidence in the light most favorable to Gordon, it may fairly be said that he placed the instrumentality for fraud in the hands of Monroe with whose business and transactions he was fully familiar, and the fact that Monroe broke faith with Gordon, as asserted by him, in turning the Packard over to his company and allowing it to be sold to a third person, should not be permitted to affect the rights of one who had paid a valuable consideration therefor without any knowledge of the existence of the conditional sales contract between Gordon and Monroe. It is needless to cite cases upon this question. The language of the statute clearly provides that an estoppel to deny the seller's right to sell may operate against the conditional vendor where he has by his conduct placed himself in position to forfeit the protection of the statute. The *Sherer-Gillett Co.* case is not at variance with the views herein expressed and

merely holds that the conditional vendor will be protected when there has been a resale, unless he has estopped himself by his own conduct.

While the statute is intended to protect vendors who sell chattels on instalment payments under so-called conditional sales contracts, it also safeguards purchasers who may become the victims of fraud through acts of those who have made the fraud possible. Persons buying used cars from dealers ought to have the assurance that their vendors have title to the chattels sold and for which valuable considerations are paid. To hold otherwise would make it unsafe for anyone to purchase a used car from a dealer, as he could not be certain of his title after the purchase price had been paid.

For the reasons stated, the judgment of the trial court will be affirmed.

*Affirmed.*

Wilson, P. J., and Hebel, J., concur.