Duell Gabbert, Appellee, v. A. E. Antonsen, Trading as Antonsen Motor Sales, Appellant.

Gen. No. 35,559.

Opinion filed April 5, 1932.

Benjamin F. Fohrman, for appellant; Nathan Schwartz, of counsel.

Alfred Roy Hulbert, for appellee.

Mr. Presiding Justice Gridley delivered the opinion of the court.

On January 9, 1931, an action in replevin was commenced in the municipal court against defendant to recover the possession of a Nash automobile of the claimed value of $750. The bailiff was unable to find the car and returned the writ as served upon defendant but "unexecuted as to the property." Subsequently, by leave of court, plaintiff filed a statement of claim in trover in which he alleged that on November 14, 1930, he was lawfully possessed of and owned the car and casually lost it, and that it came into de-

fendant's possession, who unlawfully converted to his own use, etc. Defendant entered his appearance. On June 26, 1931, on a second trial without a jury, the court found defendant "guilty in trover of converting the property" and assessed plaintiff's damages at $475. Judgment was entered upon the finding and defendant appealed.

On the trial the following facts appeared: On and prior to December 1, 1928, defendant, as Antonsen Motor Sales, was engaged in the automobile business at 6716–18 S. Western avenue, Chicago. He sold Nash automobiles, bought and sold used cars of various kinds and repaired automobiles. On December 1, 1928, he sold and delivered the Nash car in question (then new) to Herbert Scott, at the price of $1,535, taking title and possession of an used Chevrolet car, then owned by Scott, at the agreed price of $625 as a "down payment" on the Nash car. On the same day Scott and his wife, Hattie, executed and delivered their judgment note for $1,127.16, payable to defendant's order at the office of National Bond & Investment Co., Chicago, in instalments of $62.62 a month, commencing on January 1, 1929, with interest at 7 per cent per annum after maturity. It is stated on its face that it "is given in conformity with the provisions of a conditional sale contract executed by the makers." In the contract, on an usual printed form, dated December 1, 1928, and signed by defendant and by Scott and wife, it is stated that, in consideration of the sum of $625 paid by Scott, as "purchaser," and of the further sum of $1,127.16 to be paid, defendant, as "seller," agrees to sell and deliver to Scott said Nash car; that the purchaser agrees to make the deferred payments in accordance with the terms of a note of even date for $1,127.16; and that "to induce the seller to deliver possession of the car to the purchaser," he agrees and warrants that "the title to the above described automobile shall

not pass to the purchaser until all of the instalments of the note are paid in full, and until such payments shall have been made the automobile shall remain the property of the seller.'' On the same day defendant indorsed the note, without recourse, to the order of the National Bond & Investment Co., and also signed a certain ''assignment,'' printed on the back of the contract, as follows: ''For value received, the within contract and all right, title and interest of the seller, therein and thereunder and to the property therein described, are hereby sold, assigned and transferred to National Bond & Investment Co., Chicago, and to its successors and assigns, this December 1, 1928.'' On the completion of the transaction Scott drove away the car and thereafter used it, and defendant on the same day delivered said note, so indorsed, and said contract, so assigned, to the Investment Co.

About a week later the car was badly damaged in an accident and Scott brought it to defendant's shop for the purpose of having it repaired. Defendant agreed to repair it, performed labor and furnished materials thereon to the claimed value of $265, and rendered an itemized bill, dated December 11, 1928 (introduced in evidence) to Scott for said amount. Scott did not pay the bill and defendant presented to him for his signature a claimed *second* conditional sale contract and a judgment note for $265 (both introduced in evidence by defendant), and Scott signed them and drove the car away. In said *second* contract, dated December 11, 1928, Scott, called the ''purchaser,'' acknowledges delivery and acceptance of the automobile (describing it) ''which purchaser buys and seller (defendant) sells on the following terms and conditions: The time purchase price for which is $————, of which $———— on or before the delivery of car has been paid in cash, and/or $———— allowed for another car traded in, and a balance of $265 is owing

and for which a note, of even date payable in 4 equal monthly instalments, commencing one month from date, has been given to seller as evidence but not as payment. Title to said car shall remain in seller until all amounts due hereunder are fully paid in cash. Said note or this contract may be negotiated or assigned, or the payment thereof renewed or extended without passing title of said car to purchaser," etc. By the note Scott promised to pay to the order of defendant $265, "in four instalments of $66.25, every three months, . . . together with interest after maturity at the highest legal contract rate," etc. This contract and note thereafter remained in defendant's possession. Scott did not pay to him thereafter any of the instalments of the note or any money for said repairs.

On August 15, 1929, Scott and wife, for a consideration paid to them by plaintiff, assigned in writing to plaintiff all their interest in the car and in the *first* conditional sale contract. And plaintiff paid to the National Bond & Investment Co. all that remained due on said contract and, with the consent of the Investment Co., took possession of the car as owner. Plaintiff did not know, nor was any notice given to him, until November, 1930, that defendant had in his possession the Scott note for $265 or the so-called *second* conditional sale contract, or that defendant claimed any interest in the car. On November 14, 1930, defendant, relying solely upon said *second* conditional sale contract, and possibly believing he had title to the car and the right to its possession, instructed the "Finance Service Corporation" to take the car from plaintiff's possession. It did so and delivered the car to defendant, who thereafter sold it for $400 and converted the money to his own use. While the evidence is conflicting as to the reasonable value of the car at the time it was taken from plaintiff's possession, no point is made that the finding and judgment against defendant are excessive.

Defendant's counsel here contend that the judgment against defendant is contrary to the evidence and the law. They state their theory of defense in their printed brief as follows: "That the plaintiff took the automobile by way of assignment from Scott and wife, and, therefore, subject to any *lien,* or *reservation of title,* still outstanding against the automobile," and that defendant "had reserved title to himself under the *second* conditional sale contract, executed to him on December 11, 1928, which debt had been contracted for repairs on the automobile." In support of their contention and theory they cite, among others, the case of *Sherer-Gillett Co. v. Long,* 318 Ill. 432, 434, where it is decided (following the language of section 23 of our Uniform Sales Act, Cahill's St. 1931, ch. 121a, ¶ 26, p. 2473) that "where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell." We cannot agree with counsels' contention or theory. It is clear that when, on December 1, 1928, defendant indorsed the Scott note for $1,127.16, without recourse, to the Investment Co., and also assigned in writing all his title and interest in the *first* conditional sale contract and in the automobile described therein to the Investment Co., defendant disposed of *all* the title and interest which he had therein. When during December, 1928, Scott brought the car to defendant for the purpose of having defendant make repairs upon it, the title to the car was in the Investment Co., by virtue of said *first* conditional sale contract, assigned by defendant to it, and defendant then had no interest in said contract or car. The fact that defendant made repairs on the car at Scott's request, to the claimed value of $265, did not cause defendant to become such an owner of the car as to be considered

as a "seller" of it, as stated in the *second* contract. He could not again conditionally sell a chattel, the title to which, by his said assignment on the *first* contract, he had already transferred for a consideration to the Investment Co. On December 11, 1928, after he had made the repairs he possibly had a *lien* upon the car for the reasonable value of such repairs, by virtue of section 1 of the act of 1921, providing for a "lien for labor on or storage of chattels" (Cahill's St. 1931, ch. 82, ¶ 45, p. 1806), but that lien expired 60 days thereafter, it not appearing in the present transcript that defendant ever attempted to comply with section 2 of said act. And when on August 15, 1929 (about 8 months after December 11, 1928) plaintiff, in good faith and for value and without notice that defendant had any claim on or interest in the car, received it from the Investment Co., and paid to the Investment Co. all that was due on the original Scott note for $1,127.16 and on the *first* conditional sale contract, we are of the opinion that plaintiff acquired good title to, and right to the continued possession of, the car, free and clear of all claims of defendant because of the so-called *second* contract with Scott, or because of the claimed lien for repairs made by defendant for Scott. After August 15, 1929, the repairs not having been paid for by Scott, the only remedy that then was open to defendant for the recovery of the amount of said repairs, as it appears to us, was to proceed against Scott on his judgment note for $265. Under all the facts in evidence he should be precluded from claiming that he had any title to the car because of the so-called *second* conditional sale contract. (See *Gordon Motor Finance Co. v. Aetna Acceptance Co.,* 261 Ill. App. 536, 541.) And we think it is clear that on November 14, 1930, defendant had no lawful right to cause the car to be taken from plaintiff and delivered to him, and that when he thereafter sold it and

retained the proceeds he was guilty of unlawfully converting plaintiff's property to his own use.

The judgment of the municipal court should be affirmed and it is so ordered.

*Affirmed.*

KERNER and SCANLAN, JJ., concur.